UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dennis Esanbock, Barbara Esanbock, Christopher Spinks and Kevin Swehla, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Weyerhaeuser Company,<br><br>Defendant. | Case No. 17-cv-3702 (SRN/DTS)<br><br>**ORDER ON OBJECTIONS TO REPORT & RECOMMENDATION** |

E. Michelle Drake and Joseph Hashmall, Berger & Montague, P.C., 43 S.E. Main St., Ste. 505, Minneapolis, MN 55414, for Plaintiffs

Mark Mester, Latham & Watkins LLP, 330 North Wabash Ave., Ste. 2800, Chicago, IL 60611, and S. Jamal Faleel, Blackwell Burke PA, 431 S. 7th St., Ste. 2500, Minneapolis, MN 55414, for Defendant

SUSAN RICHARD NELSON, United States District Judge

**I.      INTRODUCTION**

This matter is before the Court on the Objections [Doc. No. 59] of Defendant Weyerhaeuser Company ("Weyerhaeuser") to Magistrate Judge David Schultz's July 30, 2018 Report and Recommendation (R&R) [Doc. No. 56]. In the R&R, the magistrate judge recommended that Weyerhaeuser's Motion to Compel Arbitration and Dismiss or

Stay the Claims of Plaintiff Kevin Swehla [Doc. No. 34] be denied. Plaintiff Swehla has filed a response [Doc. No. 71] to the Objections.

Pursuant to statute, this Court reviews *de novo* any portion of the magistrate judge's opinion to which specific objections are made, and "may accept, reject, or modify, in whole or in part, the findings or recommendations" contained in that opinion. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b); D. Minn. LR 72.2(b)(3). For the reasons stated herein, the Court overrules Weyerhaeuser's Objections and adopts the R&R.

## II. BACKGROUND

In August 2017, Plaintiffs filed this products liability putative class action against Defendant Weyerhaeuser. (Compl. ¶¶ 1–2 [Doc. No. 1].) Plaintiffs are homeowners whose homes or properties contain construction joists manufactured by Defendant. (*Id.*) Plaintiffs allege that the joists are defectively designed and manufactured, specifically with respect to a coating on the joists that contains a formaldehyde-based resin. Plaintiffs contend that the resin "off-gasses" formaldehyde in amounts exceeding acceptable levels, making their homes uninhabitable. (*Id.* ¶¶ 3–6.) They assert legal claims of breach of express and implied warranty, violation of the Magnuson-Moss Warranty Act, strict liability, negligence, and violations of Minnesota's Unlawful Trade Practices Act and Consumer Fraud Act. (*Id.* ¶¶ 75–187.)

In 2017, Named Plaintiff Kevin Swehla was under contract to purchase a home in Carver, Minnesota that was built using the allegedly defective joists. (*Id.* ¶ 31.) He entered into a contract, the Home Purchase Agreement ("HPA") [Doc. No. 39-1], with non-party

2

Mattamy. Before Swehla closed on the home, he learned of the alleged joist defect, and brought this suit before the closing date. (Compl. ¶¶ 31–35.)

The HPA contains two different procedures for resolving disputes: Section 13 governs pre-closing disputes and Section 14 governs post-closing disputes. (HPA §§ 13 & 14.) The dispute resolution provision in Section 13 states that "claims brought prior to [c]losing" are to be heard "by the court with jurisdiction where the property is located."[1] (*Id.* § 13(b).) The dispute resolution provision in Section 14 states that claims "brought after [c]losing" are subject to arbitration. (*Id.* § 14(d).)

The crux of Defendant's immediate dispute hinges upon whether other language in Section 13 is a typographical error or an internal cross reference. Section 13 states that "for any claims brought prior to Closing, the procedures under this **Section 14** shall be the exclusive and mandatory means for resolving all disputes." (*Id.* § 13) (emphasis in original). Similarly, Section 14 states that "for any claims brought after Closing, or any claims which are subject to the notice requirements of Minnesota Statutes Chapter 327A, the procedures under this **Section 15** shall be the exclusive and mandatory means for resolving all disputes and claims . . . ." (*Id.* § 14) (emphasis in original). Section 15, however, does not concern dispute resolution procedures, but instead addresses disclosures and statutory requirements for things like radon, formaldehyde, methamphetamine production, and so forth. (*Id.* § 15.)

Defendant urges a literal reading of the HPA, arguing that it mandates arbitration.

---

[1] The provision contains an exception, not applicable here, that pre-closing disputes arising under Minnesota Statutes Chapter 327A.02 for statutory warranty claims are not subject to the dispute resolution provisions of Section 13.

Weyerhaeuser thus filed the underlying motion to compel arbitration or stay Swehla's claims. In opposition, Swehla argues that because he brought suit before closing on the home, this is a pre-closing dispute governed by Section 13 of the HPA, which does not compel arbitration.

In the R&R, the magistrate judge found that the HPA was a valid agreement that extended to third-party beneficiaries such as Weyerhaeuser, based on express language in the HPA regarding parties related to or associated with Mattamy. (R&R at 7–8) (citing HPA §§ 13 & 14). Consequently, he found that Weyerhaeuser was entitled to enforce the provisions of the HPA. (*Id.*) These findings are not in dispute.

After thoroughly reviewing the four corners of the HPA, the magistrate judge found that Plaintiff's dispute was a pre-closing dispute, governed by Section 13, for which arbitration was not required. (*Id.* at 11–24.) He observed that Swehla filed suit on August 11, 2017, before the closing on his house. (*Id.* at 2–3) (citing Compl. ¶¶ 31–35).

The magistrate judge further found that the HPA was clear and unambiguous. However, in construing the contract, Magistrate Judge Schultz found that certain internal references were off by one digit, such that the reference to "this Section 14" in Section 13 was an obvious typographical error that should have read "this Section" or "this Section 13." (*Id.* at 13.) Similarly, he found that the reference to "this Section 15" in Section 14 was also a typographical error that should have read "this Section" or "this Section 14." (*Id.* at 14.) The magistrate judge also identified instances in other sections of the HPA in which the typographical error continued, in a consistent pattern. (*See, e.g.*, *id.* at 12–15.) He noted, "It is readily apparent that these obvious typographical errors resulted during the

4

drafting process when a numbered section appearing in the HPA above what is the present Section 12 was deleted from the Agreement. This deletion changed the paragraph numbers but did not change the internal numeric references within each paragraph." (*Id.* at 16.) The magistrate judge found that when the errors were corrected so that the internal numeric references in paragraphs 12–26 were lowered by 1, "the entire HPA and its internal numeric references are logical and coherent." (*Id.*) In contrast, the magistrate judge found that Weyerhaeuser's proposed literal construction of the HPA would render certain provisions internally inconsistent, (*id.* at 15 n.5), or superfluous. (*Id.* at 13.) Because he found the HPA clear and unambiguous, Magistrate Judge Schultz found that discovery and a summary trial regarding the HPA were unnecessary. (*Id.* at 18–19.) Accordingly, the magistrate judge recommended that Defendant's motion be denied. (*Id.* at 24.)

In its Objections, Weyerhaeuser argues that the magistrate judge erred by: (1) concluding that Plaintiff's claims are not "post-closing" claims, subject to arbitration; (2) concluding that Weyerhaeuser's reading of Section 13 is not reasonable and that pre-closing claims are not subject to arbitration; and (3) failing to recommend a summary trial under the Federal Arbitration Act to address the HPA's alleged ambiguities and perceived errors. (Objs. at 7.)

## III. DISCUSSION

### A. Whether Plaintiff's Claims Were Brought Pre-Closing or Post-Closing

Weyerhaeuser argues that the magistrate judge erred in finding that Swehla's claims are pre-closing claims within the meaning of the HPA, asserting that: (1) the HPA limits pre-closing disputes to those that can be resolved *before* closing through specific

5

performance; and (2) Plaintiff did not have the requisite ownership of the joists in question, therefore his claims could not properly be brought or maintained *before* closing. (*Id.* at 7–8) (emphasis in original).

The Court disagrees. Rather, as the magistrate judge explained, under the terms of the HPA, disputes are defined by their timing. (*See* R&R at 22.) The magistrate judge correctly found that because Swehla's claim was brought before he closed on the home, it was a pre-closing claim, governed by Section 13. (*Id.*) (quoting Section 13 which defines pre-closing disputes as "any claims brought prior to [c]losing"). The *resolution* of claims prior to closing is not required under the plain language of the HPA.

Defendant argues that under the magistrate judge's construction, one of the procedures listed in Section 13 directs all parties and all disputes to Section 12(b), which refers to "Default by Seller."[2] (Objs. at 9.) In Section 12(b), Weyerhaeuser asserts, only the remedy of specific performance is available. (*Id.*) The magistrate judge rejected this argument, finding the provision on "Default by Seller" inapplicable because this dispute does not concern default, and is not against the Seller. (R&R at 21.) The Court agrees.[3]

---

[2] The literal language in Section 13(b) refers the parties to Section 13(b), which is non-sensical, as it would mean that any disputes not resolved by a judge would be resolved by a judge. (*See* R&R at 13 n.4.) Under the magistrate judge's construction, the reference is to Section 12(b) and properly reads, "**Resolution by Judge**. Any disputes not resolved pursuant to Section [12](b) [regarding default] will be resolved by the court with jurisdiction where the Property is located[.]" (HPA § 13(b)) (emphasis in original).

[3] Weyerhaeuser also argues that "Plaintiff provided Weyerhaeuser *no* opportunity to cure, in spite of now claiming his claims are pre-closing claims." (Objs. at 9 n.5) (discussing Section 13(a) (emphasis in original)). Defendant raises this argument in opposition to the magistrate judge's construction. The Court finds no inconsistency, as the internal reference in Section 13(a) is to the notice and cure provisions for default in Section 12(b),

Weyerhaeuser contends that even under the magistrate judge's construction, Section 13 still refers to arbitration. (Objs. at 14) (citing HPA § 13(c) (requiring parties to "pay the fees of their own attorneys . . . [in] arbitration"); *id.* § 13(d) (requiring parties to "pay all the costs they incur . . . [in] arbitration"; *id.* § 13(f) (stating that a plaintiff has no "right or authority for any claims to be arbitrated on a class action or consolidated basis")). Section 13(c) merely states that the parties "will be responsible to pay all costs they incur . . . whether incurred prior to the initiation of any proceeding, in mediation, arbitration, court or other proceeding." (*Id.* § 13(c).) These boilerplate references, which include arbitration in a laundry list of possible proceedings, do not change the fact that Section 13 calls for court resolution of pre-closing disputes. The same litany of possible proceedings in which parties are to bear their own costs is repeated in Section 14(f), within the larger arbitration section. Defendant does not argue that the inclusion of court proceedings in Section 14(f) means that Section 14 requires the court resolution of disputes, which would be the logical extension of Defendant's argument.

As noted, Defendant also argues that Swehla did not possess the requisite ownership of the joists to bring a pre-closing suit. (*Id.* at 11–13.) Weyerhaeuser asserts that the magistrate judge's construction of the contract will lead to "illogical results." (*Id.* at 12.) Rather, as the magistrate judge explained:

> [p]rior to closing on the house, Weyerhaeuser's conduct allegedly interfered with and delayed Swehla's ability to close on the home, thereby causing

---

under the magistrate judge's construction. Section 12(b) includes such provisions for notice and cure. To the extent that Weyerhaeuser presents the separate, substantive argument that notice was lacking here, this argument is not germane to the resolution of the instant motion.

> Swehla damage and potentially exposing Swehla to a default claim by Mattamy. Therefore, the theory on which Swehla's claims are premised does not require that Swehla own the Joists in question. Accordingly, because Swehla's claims are not premised on ownership of the Joists, they cannot fairly be deemed—on that rationale—a post-closing dispute.

(R&R at 22.) The Court finds nothing illogical about the magistrate judge's reasoning, and in fact, agrees with it.

### B. Whether the Magistrate Judge's Construction of the Contract is Reasonable

Defendant argues that the R&R ignores the intent of the parties. (Objs. at 11.) The Court disagrees and finds that the magistrate judge's well-reasoned construction of the contract fully supports the parties' intent that disputes arising before closing are to be decided in court, whereas disputes arising after closing are subject to arbitration.

Nor does the Court find that the magistrate judge's construction of the HPA "flip[s] the FAA's operative presumptions" with respect to arbitration provisions, as Weyerhaeuser argues. (*Id.* at 13) (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018) (reversing district court's denial of motion to compel arbitration where district court strove to interpret the claims as falling outside the scope of the agreements)). The magistrate judge properly observed that the FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2; *Sec. Life Insur. Co. v. Sw. Reinsure, Inc.*, No. 11-cv-1358 (MJD/JJK), 2013 WL 500362, at *5 (D. Minn. Feb. 11, 2013), and requires a "liberal reading of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, n.27 (1983). As the magistrate judge noted, any doubts as to arbitrability are resolved in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–*

*Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Further, Magistrate Judge Schultz accurately stated, "Courts applying Minnesota law recognize that a motion to compel arbitration should be granted unless 'it may be said with positive assurance that the arbitration clause is not susceptible of any interpretation that covers the asserted dispute.'" (R&R at 6) (citing *Sec. Life Insur. Co.,* 2013 WL 500362, at \*6; *Nu-Life Prods., Inc. v. Hendrickson*, No. 09-cv-3730 (JMR/JJK), 2010 WL 11537436, at \*2 (D. Minn. May 28, 2010); *Richert v. Nat'l Arbitration Forum*, No. 09-cv-763 (ADM/JJK), 2009 WL 3297565, at \*11 (D. Minn. Oct. 13, 2009)). Applying the law to the facts of the case, the magistrate judge properly found that in this case, "it can be said with 'positive assurance' that Swehla did not agree to arbitrate this dispute." (*Id.* at 7.)

Weyerhaeuser also objects to the magistrate judge's finding that the HPA is not ambiguous. (Objs. at 13.) The magistrate judge painstakingly construed the HPA, finding it clear and the parties' intent unambiguous, despite the presence of a recurring typographical error.[4] Once the typographical error is accounted for, the contract is clear. The Court

---

[4] (*Id.* at 18) (citing *Penncro Assocs., Inc. v. Spring Spectrum L.P.*, No. 04-2549-JWL, 2006 WL 1320252, at \*10 (D. Kan. May 15, 2006) (holding that because omission of the word "agrees" from the contract was an obvious typographical error that did not impair "the Court's ability to ascertain the intent of the parties from the four corners of the contract," the missing word did not render the contract ambiguous); *Blood & Tissue Ctr. of Central Tex. v. Westchester Fire Ins. Co.*, No. A-09-CA-275-SS, 2009 WL 10669370, at \*5 (W.D. Tex. June 5, 2009) (holding that exclusion in an insurance contract contained a typographical error that was obvious within the four corners of the contract: "typographical mistakes in a contract . . . yield to the rule that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions …"); *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 979 F. Supp. 206, 213 (S.D.N.Y. 1997) (holding contract unambiguous despite omission of the word "is": "the fact that clarity of language is important in a Himalaya Clause does not mean that a court cannot apply common sense in assessing the parties' intentions. In this case, the omission of the word 'is' appears to have

agrees with the magistrate judge's finding that the HPA is not ambiguous.

## C. Whether Discovery and a Summary Trial is Necessary

Because the contract is not ambiguous, there is no need for discovery and a summary trial on its meaning. Weyerhaeuser relies on *Nebraska Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741 (8th Cir. 2014), in which the court ordered a trial to determine issues of fact regarding whether one party had agreed to sign forms concerning arbitration. (Objs. at 15–16.) There is no such fact dispute here. Rather, the magistrate judge's construction of the HPA is consistent with the parties' intent to permit court resolution of disputes prior to closing and to require arbitration for disputes after closing,

---

been a mere typographical error."); *Children's Bd. Of Hillsborough Cty. v. Mossaic Network, Inc.,* No. 8:15-cv-1860-T-26MAP, 2016 WL 7423192, at *2 (M.D. Fla. Sept. 2, 2016) (finding that a reference in a building contract to representations and warranties in "Section L" was an evident typographical error that should be read to say "Section N"); *Starr v. Union Pac. R.R. Corp.*, 31 Kan. App.2d 906, 909-10 (Kan. Ct. App. 2001) ("errors in contracts, which do not create such inconsistency that the overall intent of the parties cannot be determined from the four corners of the instrument, do not result in an ambiguous contract but merely create an inconsistency subject to interpretation by the court considering the contract as a whole."); *Brown v. Lang*, 675 P.2d 842 (Kan. 1984) (mere mathematical or typographical error in a contract does not render it ambiguous); *84 Lumber Co. v. F.H. Paschen*, No. 12-cv-1749, 2017 WL 467679, at *5 (E.D. La. Feb. 3, 2017) (bonds' reference to erroneous date of incorporated subcontract was a mere typographical error that did not create an ambiguity "since the bond clearly identifies the parties to the [sub]contract and . . . guarantees the performance of the Principal . . .. [E]ach provision in a contract must be interpreted in light of the entire contract as a whole."); *Eldridge v. Poirier*, 50 S.W.2d 888, 891 (Tex. Ct. Civ. App. 1932) (repeated reference in contract to the wrong party did not render contract ambiguous because it "was obvious that the name of Eldridge was erroneously written for that of Mayfield at the three places in the contract. The doctrine is well established that written contracts will be construed according to the intentions of the parties, notwithstanding errors and omissions, when, by perusing the entire document, the errors can be corrected and omissions supplied, and, to this end, words, names, and phrases misused may be omitted entirely, and words, names, and phrases obviously intended may be supplied."); *Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.,* No. 15-cv-02896-HSG, 2017 WL 1065132, at n.3 (N.D. Cal. March 21, 2017) ("the Court will not disregard unambiguous language based on inconsequential typographical errors.")).

and results in an internally consistent, logical reading of the agreement.  No discovery or summary trial is necessary.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Objections [Doc. No. 59] to the magistrate judge's July 30, 2018 Report & Recommendation are **OVERRULED**;

2. The July 30, 2018 Report & Recommendation [Doc. No. 56] is **ADOPTED**; and

3. Defendant's Motion to Compel Arbitration and Dismiss or Stay the Claims of Plaintiff Kevin Swehla [Doc. No. 34] is **DENIED**.


Dated: January 2, 2019

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Judge